## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

YELENA SKRIPCHENKO, *et al.*,

    Plaintiffs,

v.

                               Civil Action No. TDC-13-0004

VIRXSYS CORPORATION, *et al.*,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs'[1] Motion for Partial Summary Judgment as to Plaintiffs' Maryland Wage Payment Collection Law ("MWPCL") Claim (Count I) against Defendant VIRxSYS Corporation ("VIRxSYS"). ECF No. 24. The issue before the Court is whether Plaintiffs have demonstrated sufficient undisputed facts to show that VIRxSYS failed to pay Plaintiffs their earned wages in violation of the MWPCL, thereby entitling Plaintiffs to judgment as a matter of law. The Court has reviewed the pleadings and supporting documents and heard oral argument on September 3, 2014. For the reasons outlined below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On January 2, 2013, Plaintiffs filed suit against their former employer VIRxSYS, a privately-held biotechnology company, and other Defendants to recover unpaid wages for the

---

[1] The moving plaintiffs are Yelena Skripchenko ("Skripchenko"), Jun Wang ("Wang"), Katherine Radd ("Radd"), Eden Deausen ("Deausen"), Yue Sun ("Sun"), Scott Jendrek ("Jendrek"), Stephen Gary Mansfield ("Mansfield"), Laura Talmadge ("Talmadge"), Shirley John ("John"), Rachelle Williams ("Williams"), Tawanda Palmer ("Palmer"), and Michael Belverud ("Belverud") (together, "Plaintiffs"). Benyan Asefa and Lan Fei Chang, also plaintiffs in this action, do not join in this Motion. Mot. Partial Summ. J. at 1 n.1, ECF No. 24.

period between February 1, 2012 and the end of their employment on March 15, 2012.[2]  ECF

No. 1.  The other Defendants in this case are Signature Capital, LLC ("Signature Capital"),

William J. Turner ("Turner"), and Dr. Lawrence L. Michaelis ("Michaelis").[3]  However,

Plaintiffs' MWPCL claim against Signature Capital and their additional claims of negligent

misrepresentation (Count II), Fair Labor Standards Act violations (Count III), and Quantum

Meruit (Count IV) against some or all Defendants are not at issue in this Motion for Partial

Summary Judgment.

On April 24, 2013, VIRxSYS and Michaelis filed their Answer, stating in various

paragraphs throughout:

> As Plaintiffs are aware, Virxsys's[4] operations ceased on or about March 2012 and
> Defendants have had no access to any of Virxsys's business records.  Defendants
> are without sufficient knowledge to admit or deny the allegations . . . .

E.g., VIRxSYS's Answer ¶ 23, ECF No. 4.  On August 26, 2013, having received the rest of the

Defendants' Answers, the Court entered a Scheduling Order, setting a discovery deadline of

January 8, 2014.  This deadline was later extended to March 28, 2014.  ECF No. 18.

On February 3, 2014, Plaintiffs filed a Motion for Sanctions and Order of Default Against

VIRxSYS for its "total and complete failure to serve any response to Plaintiffs' First Set of

---

[2] On January 9, 2013, Plaintiffs filed an Amended Complaint that neither added nor amended any factual allegations or claims, but added Belverud to the case as a plaintiff.  ECF No. 3.

[3] Plaintiffs' Complaint identifies Signature Capital as a venture capital company that, at all relevant times, funded and directed operations and research at VIRxSYS; Turner as a Director, Co-Founder, and member of the Board of Directors of VIRxSYS and also a Managing Director and co-founder of Signature Capital; and Michaelis as the VIRxSYS's Interim President and Chief Executive Officer, and a member of the Board of Directors of VIRxSYS since 2003 and Chairman of the Board since 2004.  Am. Compl. ¶¶ 4-10.

[4] The parties appear to alternate between using "VIRxSYS" and "Virxsys" in their filings.  The Court will use "VIRxSYS," unless it is quoting directly from the parties' filings that use the lower case spelling.

Interrogatories and First Set of Requests for Production of Documents," despite several extensions to which Plaintiffs had voluntarily agreed. Mot. Sanctions ¶¶ 5, 8, ECF No. 19. In its Opposition to the Motion for Sanctions, VIRxSYS requested that the Court deny the Motion because, "[a]s explained in VIRxSYS's Answer to Plaintiffs' Amended Complaint, in March 2012, VIRxSYS's day-to-day operations ceased due to lack of funding," and "[a]s a result, VIRxSYS ha[d] no access to any of its business records, including personnel files and payroll records." Opp. Mot. Sanctions at 1-2, ECF No. 21. VIRxSYS stated that it had been "working diligently" to secure funding through Signature Capital and requested that the Court allow it additional time to gain access to its documents. *Id.* at 2-3.

On March 10, 2014, U.S. Magistrate Judge William Connelly granted Plaintiffs' Motion, reasoning that "even though Defendant VIRxSYS lack[ed] access to its business records which includes personnel files and payroll records, Defendant VIRxSYS should have made a good faith effort by answering and responding [to], to the best of its ability, Plaintiffs' discovery requests," and ordered as waived any objections, except objections based on privilege, that VIRxSYS could have asserted to Plaintiffs' First Set of Interrogatories and First Set of Requests for the Production of Documents. Order on Mot. Sanctions ¶¶ 7-9, ECF No. 23. Magistrate Judge Connelly, however, deferred the request for an order of default to the presiding district court judge to resolve. *Id.* ¶ 2.

On April 24, 2014, Plaintiffs filed a Motion for Partial Summary Judgment as to their MWPCL claim against VIRxSYS. ECF No. 24. Plaintiffs argued that there was no dispute that their wages were owed and had not been paid, in violation of the MWPCL. *Id.* at 1. In support of their Motion, Plaintiffs attached individual, sworn declarations from the moving plaintiffs that collectively stated that they were employed by VIRxSYS for varying lengths of time until March

15, 2012, and that at the end of their employment, VIRxSYS failed to pay their salaries for the period from February 1, 2012 through March 15, 2012. *E.g.*, Skripchenko Decl. ¶¶ 4-5, ECF No. 24-5.

All declarations except those of Jendrek, Talmadge, and Palmer also stated: "In or about December 2011, Virxsys promised and agreed to pay me an earned bonus equal to one (1) month of my salary if I continued to work for Virxsys notwithstanding that Virxsys had previously become erratic and inconsistent in paying my salary on the date payment was due to be paid," and that "in or about December 2011," VIRxSYS paid each Plaintiff one half of the promised and earned bonus but failed to pay the second half of the bonus at the end of each Plaintiff's employment. *E.g.*, *id.* at ¶ 7-8.

Plaintiffs also attached to their Motion VIRxSYS's Answers to the First Set of Interrogatories, ECF No. 24-2, and VIRxSYS's Responses to the First Set of Requests for Production of Documents, ECF No. 24-3. In their Interrogatories, Plaintiffs asked VIRxSYS to, among other things: identify each person having discoverable information that tends to support a position or affirmative defense (Interrog. No. 2); identify the terms and conditions of each Plaintiff's employment, including salary, bonuses, and benefits (Interrog. No. 6); state the number of hours worked weekly by each Plaintiff for the time period between January 1, 2010 to the present (Interrog. No. 7); state the amount of all wages or other forms of compensation paid to each Plaintiff for that time period (Interrog. No. 8); state whether it contends that it does not owe any wages as alleged in the Complaint (Interrog. No. 10); and state whether wages were withheld from any Plaintiff as a result of a dispute (Interrog. No. 11). Answers Interrog. at 4, 6-7, ECF No. 24-2. To each of these Interrogatories, VIRxSYS's response was nearly identical, stating that "as Plaintiffs are aware, Defendant has no access to its pay or business records," and

4

as a result, is "unable to identify any responsive documents" or is otherwise "unable to fully respond to this request," but that "[w]hen Defendant gains access to these records, Defendant will respond to this Interrogatory." *Id*.

In Interrogatory Number 16, Plaintiffs asked, "Please provide a full factual basis for each Affirmative Defense raised in your Answer." *Id*. at 9.  VIRxSYS replied:

> Defendant states that it has not yet established a set position with regard to its defenses, as discovery is not yet complete in this matter and Defendant does not [have] the benefits of the contents of its payroll and other records.  Furthermore, the ultimate burden on Defendant is to assert and prove its affirmative defenses at trial rather than through the course of discovery.

VIRxSYS did provide a substantive response to Plaintiffs' Interrogatory No. 14.  Plaintiffs' Interrogatory No. 14 asked VIRxSYS:

> At any time during the time period January 2010 through the present, did you or any of your agents ever promise or otherwise advise any Plaintiff that any delinquent or otherwise owed wages were forthcoming or would be paid at some future time?  If yes, identify and describe the circumstances of each responsive incident.

*Id*. at 8.  VIRxSYS responded, "Defendant states that some officers may have promised to compensate all former employees for wages owed, if any, under applicable state and federal law once Defendant secured sufficient funding." *Id*.

On May 27, 2014, VIRxSYS filed its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 27, and with it a previously unfiled affidavit from Michaelis stating that, in 2010, the former Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") of VIRxSYS promised employees a "retention bonus" of two weeks' pay if they remained on board, "contingent upon the financial performance of the company."  Michaelis Aff. ¶ 4, ECF No. 27-1.  In "approximately early 2011," half of the retention bonus, or one week's pay, was paid to eligible employees, but "[b]ecause of VIRxSYS's poor financial condition,

employees were never eligible for any additional bonus payments." *Id.* ¶ 5. The Affidavit also stated that, in early 2012, Michaelis "informed employees that if VIRxSYS's financial performance improved and the company secured additional funding, [he] would ask the Board of Directors to find a way to reward employees for their loyalty," but "[t]his reward was contingent on securing additional funding," as well as Board of Director approval, and no dollar figure was discussed. *Id.* ¶ 6. On the basis of the additional facts stated in the Affidavit, VIRxSYS asks that the Court deny Plaintiffs' Motion for Partial Summary Judgment as to the bonus payments allegedly owed to all moving Plaintiffs except Jendrik, Talmadge, and Palmer.

## DISCUSSION

### I.  Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In doing so, the Court views the facts in a light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), which has the burden of showing that a genuine dispute exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material fact.*" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue concerning a material fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248.

## II.    MWPCL Claim for Unpaid Wages

Under the MWPCL, an employer is required to pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3–505(a) (West 2014). Where an employer fails to do so, the employee may bring an action against the employer to recover the unpaid wages under § 3–507.2(a). In order for a plaintiff to establish a viable claim, the monies claimed must constitute a "wage" within the meaning of that law. The MWPCL defines "wage" to mean "all compensation that is due to an employee for employment," including "a bonus; a commission; a fringe benefit; . . . or any other remuneration promised for service." § 3–501(c).

In their Motion for Partial Summary Judgment, Plaintiffs argue that there is no dispute that each Plaintiff is owed earned wages for the period between February 1, 2012 and March 15, 2012, which include unpaid salary and earned and unused vacation days for that time period, and, for all moving Plaintiffs except for Jendrek, Talmadge, and Palmer, promised and earned bonuses. Below, the Court will discuss unpaid salaries and earned and unused vacation time separately from bonuses.

### A. Unpaid Salaries and Earned and Unused Vacation Time

Plaintiffs have presented sufficient facts to support summary judgment on their MWCPL claim for unpaid salaries and earned and unused vacation time. In support of their Motion, Plaintiffs have attached individual, sworn declarations that collectively state the amount of unpaid salary and earned and unused vacation time they are owed, and that they "performed all job duties and obligations" entitling them to those wages. *E.g.*, Skripchenko Decl. ¶¶ 4-6, 11-12, 14. Although the Plaintiffs note that the exact wages owed are "slightly approximated" because

the relevant documents were not produced by VIRxSYS during discovery, *e.g.*, Skripchenko Decl. ¶ 13, the spreadsheet attached to Plaintiffs' Motion for Partial Summary Judgment indicates that they calculated their owed salary by multiplying their monthly salary—computed by dividing a Plaintiff's annual salary by twelve—by 1.5 months to account for the February 1, 2012 through March 15, 2012 period of unpaid wages, *see* Mot. Partial Summ. J., Ex. 3, ECF No. 24-4. The Declarations also that state each Plaintiff's owed earned and unused vacation time wages, which were evidently calculated by multiplying the number of such hours owed to each Plaintiff by the Plaintiff's hourly pay rate, as derived from the Plaintiff's annual salary. *Id.*

VIRxSYS has provided no factual evidence that contradicts Plaintiffs' calculations—or any factual evidence at all. To the extent that VIRxSYS raises any objections to Plaintiffs' sworn statements in its Opposition to Plaintiff's Motion for Summary Judgment, it argues generally and without citing any law that the Court should deny summary judgment on these claims "[f]or reasons of fundamental due process and basic fairness," because VIRxSYS continues to lack access to the pay and time records in possession of its landlords, despite "diligent efforts" to obtain them. Opp. Mot. Partial Summ. J. at 3. At oral argument, however, VIRxSYS acknowledged that during discovery it made no effort to obtain the documents through a Rule 45 subpoena to the landlord in possession of the records.

Although Plaintiffs' claim of unpaid wages is presently based on their sworn statements alone, such statements can support summary judgment if uncontested. *See Turner v. Human Genome Scis., Inc.*, 292 F. Supp. 2d 738, 748 (D. Md. 2003) (finding that, when records are unavailable, testimony on hours of overtime worked can establish a *prima facie* case requiring the defendant to produce contradicting evidence). *See also Khalil v. Subway at Arundel Mills Office Park, Inc.*, No. CCB-09-158, 2011 WL 231793, at *2 (D. Md. Jan. 24, 2011) (stating that

an employee's affidavit providing the number of uncompensated overtime hours worked, if it were uncontested, might entitle the employee to summary judgment on his overtime claim, even absent other evidence in the record to support his position).    Based on Plaintiffs' sworn statements, and in the absence of any other evidence in this case, contradictory or otherwise, the Court concludes that VIRxSYS has not met its burden of showing that there is a factual dispute in this case, and Plaintiffs have laid out sufficient, undisputed facts to support summary judgment in their favor as to the issue of unpaid salaries and earned and unused vacation time. As set forth in Attachment A to this Memorandum Opinion, VIRxSYS owes Plaintiffs a total of $149,851.72 for unpaid salaries and vacation time under the MWPCL.

### B.   Earned Bonuses

Plaintiffs Skripchenko, Wang, Radd, Deausen, Mansfield, John, Williams, and Belverud also state in their Declarations that they were promised a one-month bonus, of which they were only paid half before the end of their employment.  Skripchenko Decl. ¶¶ 7-10; Wang Decl. ¶¶ 7-10, ECF No. 24-6; Radd Decl. ¶¶ 7-10, ECF No. 24-7; Deausen Decl. ¶¶ 7-10, ECF No. 24-8; Mansfield Decl. ¶¶ 7-10, ECF No. 24-11; John Decl. ¶¶ 7-10, ECF No. 24-13; Williams Decl. ¶¶ 7-10, ECF No. 24-14; Belverud Decl. ¶¶ 7-10, ECF No. 24-16.  Plaintiffs thus argue that they are also entitled to summary judgment for the unpaid half of their promised and earned bonuses. VIRxSYS, challenging Plaintiffs' entitlement to the bonus payment for the first time at this summary judgment stage, has submitted a previously unfiled affidavit from Michaelis, the most recent interim President and CEO of the company and also a defendant in the case.  As described below, the Michaelis Affidavit creates a genuine issue of material fact whether Plaintiffs are entitled to the bonus payments.  Although, as Plaintiffs argue, VIRxSYS failed to comply with the requirement of Federal Rule of Civil Procedure 26(e) to disclose the contents of the

9

Michaelis Affidavit during discovery, the Court declines to exclude the affidavit under Rule 37(c) and instead reopens discovery to allow Plaintiffs to depose Michaelis on the bonus issue. The Court will also consider from Plaintiffs any motions for other discovery sanctions permitted under Rule 37(c). The Motion for Partial Summary Judgment as to the bonus payments is denied.

### 1. The Michaelis Affidavit

In their declarations, Skripchenko, Wang, Radd, Deausen, Mansfield, John, Williams, and Belverud state that:

> In or about December 2011, Virxsys promised and agreed to pay me an earned bonus equal to one (1) month of my salary if I continued to work for Virxsys, notwithstanding that Virxsys had previously become erratic and inconsistent in paying my salary on the date payment was due to be paid.

*E.g.*, Skripchenko Decl. ¶ 7. Plaintiffs further state that they continued "employment with Virxsys under conditions wherein Virxsys continued its erratic, inconsistent, and untimely salary payments," and that VIRxSYS paid Plaintiffs one-half of the bonus "in or about December 2011," but failed to pay the second of the promised and earned bonus at the end of their employment. *E.g.*, *id.* ¶ 8-10.

In opposition to this motion, VIRxSYS has submitted an affidavit from Michaelis, which states that, in 2010, the former CEO and CFO promised employees a "retention bonus" of two weeks' pay if they remained on board, "contingent on the financial performance of the company." Michaelis Aff. ¶ 4. In 2011, half of the retention bonus, or one week's pay, was paid to eligible employees, but because VIRxSYS was in poor financial condition, no additional bonus payments were made. *Id.* ¶ 5. Michaelis further states that he informed employees in early 2012 that if VIRxSYS's financial performance improved and the company secured additional funding, he would ask the Board of Directors to find a way to reward employees for

their loyalty, though no dollar amount was discussed and the reward was contingent on securing additional funding. *Id.* ¶ 6.

First, VIRxSYS argues that the Michaelis Affidavit contradicts the facts laid out in Plaintiffs' Declarations regarding the conditions under which the bonuses were promised, creating a genuine issue of material fact. Second, it argues that the Affidavit shows that any alleged "bonuses" do not meet the definition of "wages" under the MWPCL because as described by Michaelis, any additional payments were discretionary in that the company retained the option not to pay them if VIRxSYS's financial health did not improve. Under the MWPCL, the term "bonus" is included in the definition of "wage," Md. Code Ann., Lab. & Empl. § 3–501(c)(2), but any monies to be paid to employees, regardless of label, are "wages" only if they were promised as a term of employment as compensation for the employee's services and were not dependent on conditions other than the employee's efforts. *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 419-20 (4th Cir. 2005); *Medex v. McCabe*, 811 A.2d 297, 302-03 (Md. 2002) (explaining that "not all bonuses constitute wages" under the MWPCL unless the bonus is in exchange or remuneration of employee's work, such as "incentive fees" given to employees in exchange for meeting target sales goals).

Although Michaelis's reference to a promised retention bonus in 2010 stems from a significantly different time period than the December 2011 promised bonus described by Plaintiffs, and therefore may not controvert Plaintiffs' account, Michaelis's reference to his commitment in early 2012, that he would ask the Board of Directors to find a way to reward employees for their loyalty if the company's financial performance improved and it secured additional funding, more clearly presents an alternative to Plaintiffs' version of events. Because Michaelis asserts that any commitment he made was non-specific and dependent on the

11

company's fortunes, the Michaelis Affidavit establishes a genuine issue of material fact whether Plaintiffs were promised a bonus that constitutes a wage under the MWPCL, such that the failure to pay the second half of the bonus would constitute a violation of the statute. Indeed, Plaintiffs' Counsel conceded at oral argument that the Michaelis Affidavit, if not excluded, creates a genuine issue of material fact as to the bonus issue.

### 2. Violation of Rule 26(e)

Plaintiffs argue that summary judgment is still appropriate because the Court should exclude the Michaelis Affidavit altogether due to VIRxSYS's failure to disclose the information contained in the Affidavit in response to Plaintiffs' discovery requests. Under Federal Rule of Civil Procedure 37(c), a party that has failed to produce information required by Rules 26(a) and (e) may not present the undisclosed information in its defense on summary judgment or at trial, unless the failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). In this instance, there was no violation of Rule 26(a) because the parties were not required to make Rule 26(a)(1) initial disclosures in this case, *see* Scheduling Order at 2, ECF No. 13, and the late submission of the Michaelis Affidavit violates neither Rule 26(a)(2) regarding disclosure of expert testimony, nor Rule 26(a)(3) regarding pretrial disclosures of witnesses. However, the relevant parts of Rule 26(e) require a party that has responded to an interrogatory or request for production of documents to supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Here, Plaintiffs argue that VIRxSYS was required to share the information contained in the Michaelis Affidavit in response, or as a supplement or correction to its previous responses, to

Interrogatory Numbers 10, 11, 14, and 16. *See* Reply at 2-3. Having examined the Interrogatories and VIRxSYS's Answers, the Court finds that the information contained in the Michaelis Affidavit would not have been clearly responsive to Interrogatory Numbers 11 or 14. Specifically, Interrogatory Number 11 asks whether any wages were "withheld from any Plaintiff as a result of a dispute" between the individual and VIRxSYS. Answers Interrog. at 7. Michaelis's statements that company agents promised in 2010 to pay Plaintiffs a one-month bonus if VIRxSYS's financial health improved, and that he committed in 2012 to ask the Board of Directors to find a way to reward employees for their loyalty if financial conditions improved, should not be construed as clearly responsive to this question because Michaelis does not acknowledge in his Affidavit that there was any dispute or any failure on VIRxSYS's part to pay any wages that were the subject of a dispute.

Likewise, Interrogatory Number 14 asks: "At any time during the time period [between] January 2010 through the present, did you or any of your agents ever promise or otherwise advise any Plaintiff that any delinquent or otherwise owed wages were forthcoming or would be paid at some future time?" *Id.* at 8. VIRxSYS responded: "Defendant states that some officers may have promised to compensate all former employees for wages owed, if any, under applicable state and federal law once Defendant secured sufficient funding." *Id.* Again, it is not clear that VIRxSYS was required to include in its response to this question the information contained in Michaelis's Affidavit, or provide it subsequently as an addition or correction to the original Answer, because the question does not ask whether future bonuses were promised, but only whether Plaintiffs were promised forthcoming payment of their already owed wages.

However, the Court agrees with Plaintiffs that—while very general in their wording— Interrogatory Numbers 10 and 16 required VIRxSYS to disclose the information contained in the

Michaelis Affidavit. Interrogatory Number 10 asks: "Do you contend that you do not owe any Plaintiff wages as alleged in the Complaint?" *Id.* at 7. In its original Answer to Plaintiffs' Interrogatories, VIRxSYS stated that it could not respond to the Interrogatory because it was unable to gain access to its business records. *Id.* Information contained in the late-filed Michaelis Affidavit would have been responsive to this Interrogatory in that it effectively asserts that VIRxSYS does not owe the bonuses referenced in the Complaint, because they were either not promised or were discretionary and therefore not owed as wages under the MWPCL. Similarly, Interrogatory Number 16 asks: "Please provide a full factual basis for each Affirmative Defense raised in your Answer." *Id.* at 9. In its response, VIRxSYS stated that it had not yet established a set position with regard to its defenses because it lacked access to its records. *Id.* at 9. The statements in the late-filed Michaelis Affidavit were responsive to this Interrogatory because by effectively asserting that the alleged bonuses were never promised or were contingent on the company's performance, they provide a partial factual basis for the Answer's asserted defense that "Plaintiffs' claims are barred to the extent Plaintiff[s] seek[] compensation for activities that are not compensable under the FLSA and/or the MWPCL." Answer at 14 ¶ 10. Thus, under Rule 26(e), VIRxSYS was required to correct its responses to Interrogatory Numbers 10 and 16 with the information contained in the Michaelis Affidavit.

During oral argument, VIRxSYS's Counsel argued that because Plaintiffs' Interrogatories requested information regarding "wages," VIRxSYS had no obligation to provide Plaintiffs with the information contained in the Michaelis Affidavit in response to the Interrogatories, as it was VIRxSYS's position that the bonuses were not wages under the MWPCL. However, as noted above, Interrogatory Number 10 specifically asks whether VIRxSYS contends that it does not "owe any Plaintiff wages *as alleged in the Complaint*," *id.* at 7 (emphasis added), and the

Complaint alleges that the bonuses are wages, *see* Am. Compl. ¶¶ 43, 48.  The Court therefore concludes that VIRxSYS was required under Rule 26(e) to share the information contained in the Michaelis Affidavit in its responses to, or as an addition or correction to, its responses to Plaintiffs' Interrogatory Numbers 10 and 16.[5]

The Court further notes that Interrogatory Number 2 asked VIRxSYS to identify "each person . . . having discoverable information that tends to support a position that you have taken or intend to take in this action, including any affirmative defense, and state in detail the information possessed by each person identified."  Answers Interrog. at 4.  In response to this Interrogatory, VIRxSYS answered that it had "not yet established a set position with regard to its defenses, as discovery [was] not yet complete in this matter" and it lacked access to any of its business records. *Id.*  While Interrogatory Number 2 is broadly-worded, VIRxSYS was required to identify Michaelis as a person containing such discoverable information and to disclose the information contained in Michaelis's Affidavit in its response.  This Interrogatory provides further support for the conclusion that VIRxSYS violated Rule 26(e) when it failed to provide the information contained in the Michaelis Affidavit to Plaintiffs during discovery.

### 3.  Rule 37(c) Discovery Sanctions

As the Advisory Committee Note to the 1993 Amendment to the Rule explains, Rule 37(c) provides a "self-executing sanction" of the exclusion of evidence improperly withheld during discovery that requires no motion.  Fed. R. Civ. P. 37 advisory committee note, subdiv. (c) (1993).  However, a court may forego this sanction if the failure to provide information as required by Rule 26(a) or (e) was substantially justified or harmless.  *Id.*; *see Nelson-Salabes,*

---

[5] VIRxSYS's Counsel conceded during oral argument that the information contained in the Affidavit would have been responsive to Interrogatory Number 16, which requested factual bases for all of VIRxSYS's affirmative defenses without specific mention of wages, and that VIRxSYS was therefore required to update and correct their response to Interrogatory Number 16.

*Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 512 n.10 (4th Cir. 2002). In *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003), the Fourth Circuit has stated that district courts, in exercising their broad discretion to determine whether the nondisclosure of evidence is substantially justified or harmless should be guided by a five-factor test:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 597.

On the first factor, surprise to the party against whom the evidence would be offered, it is clear that Plaintiffs were entirely unaware of the new information. After being told repeatedly during discovery that VIRxSYS had no access to any relevant information, and receiving no indication of any facts contradicting Plaintiffs' version of events, Plaintiffs were clearly surprised to learn that VIRxSYS would be asserting, for the first time at the summary judgment stage, a claim that the bonuses were never promised or were contingent on company performance. However, there is more ability to cure the surprise at this stage of the litigation than if the evidence were disclosed for the first time at trial. *See MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1357 (4th Cir. 2005) (affirming district court's application of *Southern States* analysis to exclude new damages theories introduced on the eve of trial because surprise could not be cured without postponing trial and reopening discovery). At this stage, no pretrial scheduling order has been issued and no trial date has been set in this case. Therefore, as to the second factor, VIRxSYS is able to cure the surprise by permitting Plaintiffs to depose Michaelis. Likewise, with respect to the third factor, because trial has not yet begun or been scheduled, permitting inclusion of the evidence does not disrupt a trial.

On the fourth factor, although the information in the Michaelis Affidavit is important because it goes directly to Plaintiffs' MWPCL claim for wages, it affects only Plaintiffs' entitlement to bonus payments and is therefore only one part of the case, and an issue that Plaintiffs can explore prior to trial through a deposition of Michaelis and any necessary witnesses identified through that deposition.

As to the fifth factor, VIRxSYS has not provided a substantial justification for its failure to disclose to Plaintiffs the information contained in the Michaelis Affidavit.  During oral argument, VIRxSYS's Counsel stated that, despite its best efforts, VIRxSYS continued to be unable to access its business records, and therefore did not know how it would defend the case. The information contained in the Michaelis Affidavit, however, relied not on business records, but on the personal knowledge of Michaelis, a named Defendant and the individual identified in the response to Interrogatory Number 1 as having prepared the responses to the Interrogatories. *See* Answers Interrog. at 4.  As discussed above, VIRxSYS's argument that it did not consider the Michaelis Affidavit information responsive to the Interrogatories is convincing as to some, but not all, of the Interrogatories.  Thus, the Court finds that this explanation does not rise to the level of a substantial justification.

Balancing all of the factors, the Court will not exclude the Michaelis Affidavit under Rule 37(c). Although Defendants had no substantial justification for the failure to disclose the information, the Court takes note of the fact that the Interrogatories in response to which the information should have been disclosed were not specifically targeted to obtain facts about bonus discussions.  Furthermore, Plaintiffs, for their part, did not diligently pursue such information, in that they never sought to depose Michaelis despite his clear connection to this case, and at least one substantive Interrogatory response, stating that "some officers may have promised to

compensate all former employees for wages owed . . . once Defendant secured sufficient funding," Answers Interrog. at 8 (Answer to Interrog. No. 14), should have put them on notice that there was relevant information to be discovered. Particularly because the harm to the Plaintiffs can be largely addressed by allowing additional discovery and perhaps by imposing alternative sanctions for the discovery violation, the Michaelis Affidavit is not excluded. Because, as discussed above, the Michaelis Affidavit creates a genuine issue of material fact whether Plaintiffs are entitled under the MWPCL to the second half of their claimed bonuses, Plaintiffs' Motion for Partial Summary Judgment as to the bonus payments is denied.

The Court will, however, reopen discovery so that Plaintiffs may depose Michaelis on the issue of bonus payments. Rule 37(c) states that "[i]n addition to or instead of" excluding late-filed evidence, a court may, on motion, order payment of reasonable expenses caused by the failure to disclose or "impose other appropriate sanctions, including any of the orders listed in Rule 27(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A), (C). Thus, the Court will also entertain any motion from Plaintiffs for other appropriate sanctions, including, for example, a motion to order payment of reasonable expenses for the cost of the portions of Plaintiffs' Motion for Partial Summary Judgment that address the unpaid bonuses issue, a motion to order payment of the cost of Plaintiffs' deposition of Michaelis, or both.

## III.   Enhanced Damages and Attorney's Fees

Having denied summary judgment on Plaintiffs' MWPCL claim as to their bonus payments, the Court will consider Plaintiffs' request for treble damages and attorney's fees with regard only to Plaintiffs' owed salaries and earned and unused vacation time.

## A.   Enhanced Damages

Under the MWPCL, when a court finds "that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl. § 3–507.2(b). A "bona fide dispute" exists where an employer resists the employee's claim for unpaid wages and has a "good faith basis" for doing so because there is a "legitimate dispute over the validity of the claim or the amount that is owing." *Admiral Mortg., Inc., v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000). Generally, the existence of a bona fide dispute at the time of the termination is a question of fact left for a jury and not the judge. *Balt. Harbors Charter Ltd. v. Ayd*, 780 A.2d 303, 321-22 (Md. 2000). However, it is still appropriate for a court to grant summary judgment where there is no evidence to suggest that a bona fide dispute existed. *See Marroquin v. Canales*, 505 F. Supp. 2d. 283, 296 (D. Md. 2007). Here, VIRxSYS neither submits any evidence of, nor raises the argument that there was, a bona fide dispute over Plaintiffs' owed salaries or earned and unused vacation time. Accordingly, the Court concludes that no bona fide dispute exists and that Plaintiffs are entitled to up to treble damages for their unpaid salaries and earned and unused vacation time. At oral argument, both sides agreed that in the event of a grant of partial summary judgment on the MWPCL claim, the determination of the amount of damages rests with the Court.

The Court of Appeals of Maryland recently provided limited guidance on the issue of how to determine how much should be awarded in damages in MWPCL cases in which treble damages are authorized. *Peters v. Early Healthcare Giver, Inc.*, No. 86, Sept. Term 2013, 2014 WL 3938810, at *7 (Md. Aug. 13, 2014). Recounting the history of the MWPCL, the court explained that the treble damages option was "included in the statute for a remedial purpose—to

cure what the Legislature saw as a problem with 'wage theft'" and to provide employers with "a greater incentive . . . to pay employees the amounts owed to them, in full." *Id.* (footnote and citation omitted). The court further noted that the Legislature was seeking to address the "practical difficulties that employees have in bringing lawsuits to recover wages owed." *Id.* Notably, the MWPCL private right of action with the possibility of treble damages was enacted in 1993 to provide an alternative means for employees to receive redress because budget constraints had rendered the existing remedy, lawsuits initiated by the Maryland Commissioner of Labor and Industry, insufficient "to handle the high number of enforcement actions needed." *Id.* at \*8; *Friolo v. Frankel*, 819 A.3d 354, 363 (Md. 2003). The treble damages provision was provided to give private litigants "the *same* results as if the matter had been handled by the Commissioner of Labor and Industry," *Peters*, 2014 WL 3938810, at \*8 (quoting *Wage Payment and Collection – Action for Unpaid Wages: Hearing on S.B. 274 Before the Sen. Comm. on Fin.*, 1993 Leg., 407th Sess. (Md. Feb. 4, 1993) (statement of Sen. Paula C. Hollinger, Member Sen. Comm. on Fin.). The Commissioner had identical authority to seek up to treble damages, which Maryland courts granted in the vast majority of cases: as of 1993, the Commissioner had received treble damages in 80 percent of unpaid wages cases. *Frioli*, 819 A.2d at 363. Rather than identify specific factors to consider or formulas to employ in arriving at a damages figure, the *Peters* court's guidance was as follows: "[W]e simply say that trial courts are encouraged to consider the remedial purpose of the [M]WPCL when deciding whether to award enhanced damages to employees." *Peters*, 2014 WL 3938810, at \*7.

With this context, the Court concludes that this case is appropriate for an order of treble damages. This case demonstrates both the need for remedial action to encourage employers to pay their employees in full and the "practical difficulties that employees have in bringing

lawsuits to recover wages owed." Throughout the litigation, VIRxSYS has not even attempted to identify a legal basis for its failure to pay their employees their earned wages. Yet it has also required Plaintiffs to endure the difficulties of modern civil litigation: it failed to provide substantive responses to Plaintiffs' interrogatories, requiring Plaintiffs to file a Motion for Sanctions that was granted by the U.S. Magistrate Judge, Order on Mot. Sanctions, then it continued to withhold information required to be disclosed. *See supra* Part II.B.2. As justification, VIRxSYS repeatedly asserted that it had no access to relevant business records, but at oral argument VIRxSYS counsel acknowledged that the company refrained from employing a Rule 45 subpoena to obtain the records. These tactics are referenced not to criticize VIRxSYS or seek to sanction it through enhanced damages—a defendant is within its rights to litigate aggressively—but to illustrate that, indeed, there are significant "practical difficulties" employees must face to recover earned and unpaid wages, which have caused Plaintiffs in this case to go without their earnings for over two and a half years now. Because there was absolutely no legal defense to the claim for unpaid wages, and with due consideration of the remedial purposes of the statute to provide a greater incentive for employers to pay wages in full, the Court finds that Plaintiffs are entitled to treble damages on their claims for unpaid salary and unused vacation time. Total damages owed by VIRxSYS, as set forth in Attachment A to this Memorandum Opinion, are therefore $449,555.16.

### B. Attorney's Fees

A court may also award attorneys' fees to a prevailing party under the MWPCL. Courts employ a three step process in deciding to grant attorneys' fees: (1) determining that the withholding of wages was not the result of a bona fide dispute; (2) determining whether to award attorney's fees in its discretion; and (3) determining the amount of the attorney's fees. *Barufaldi*

*v. Ocean City, Md. Chamber of Commerce, Inc.*, 47 A.3d 1097, 1103-04 (Md. Ct. Spec. App. 2012), *aff'd*, 75 A.3d 952 (Md. 2013).

As stated above, the withholding of Plaintiffs' wages was not a result of a bona fide dispute. The Court will therefore move on to the second step of determining whether to award the attorney's fees. In *Barufaldi*, the Court of Special Appeals of Maryland explained that "there is no presumption in favor of attorneys' fees in a [M]WPCL case," and that the court should "exercise its discretion liberally, in a manner that is consistent with the purposes of the [M]WPCL." *Id.* at 1110. *See also Friolo v. Frankel*, 819 A.2d 354, 364 (Md. 2003). In this case, VIRxSYS has failed to pay Plaintiffs their salaries and earned and unused vacation time for the time period between February 1, 2012 and March 15, 2012. As discussed above, Plaintiffs' suit is consistent with the MWPCL's purposes in protecting employees from deprivation of wages. Accordingly, the Court concludes that Plaintiffs are entitled to attorney's fees.

The third step is the determination of the amount of fees to award. At Plaintiffs' request, the Court will not calculate the specific amount until Plaintiffs file a petition for the specific amount of reasonable attorney's fees and expenses relating to the action to recover unpaid salaries and earned and unused vacation time. Plaintiffs shall file such petition within 30 days of the date of this Memorandum Opinion and accompanying Order.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. A separate Order follows.

Date:  September 26, 2014

THEODORE D. CHUANG
United States District Judge